TAYLOR, J.
Cleveland Glover seeks review of the trial court’s summary denial of his rule 3.850 motion for post-conviction relief. Glover, who was convicted of two counts of attempted first degree murder, alleged ineffective assistance of counsel on several grounds. We agree that he was entitled to an evidentiary hearing on his claim regarding his attorney’s failure to call an impeachment witness.
The defendant filed an amended Rule 3.850 motion alleging ineffective assistance of counsel on several grounds. The state responded, attaching the complete transcript of the trial and various other exhibits to its response. The trial court denied the motion without an evidentiary hearing based on the state’s response.
The trial transcript shows that on June 30, 2002 the victim, Shonae Tate, was visiting with her boyfriend, Christopher O’Neal, at her home. Tate asked O’Neal to leave so she could talk to her former boyfriend, Deon Robinson. A few hours later, at around 10 p.m., Robinson came to her house. Around 11 p.m., O’Neal called her cell phone and they spoke. Robinson was still there. That conversation lasted about five minutes. About fifteen minutes later, O’Neal called back and spoke with Robinson. They had a heated argument, which lasted about five minutes. About fifteen minutes later, O’Neal called again. Robinson answered Tate’s cell phone, and he and O’Neal had another heated exchange.
Tate and Robinson left home and went to Club Rolex in Miami. Tate was driving her aunt’s car. They arrived at the club around 12:30 A.M. and stayed there for about twenty minutes before returning to the car and heading back to Tate’s house. While they were on their way to Tate’s house, O’Neal called Tate’s cell phone again. She and O’Neal argued, then Robinson took the phone, and the two men continued to argue on the phone.
Tate and Robinson then drove to O’Neal’s house at O’Neal’s request. They were going there so the two men could fight. Robinson’s friend and two other men followed them over in an Escalade. When they arrived, O’Neal was there with the defendant and “a few more boys.” Tate had known the defendant for about two years “just through the streets.” They had attended the same parties. Also, the defendant was dating her cousin, Latoya Campbell. The other victim, Robinson, had known the defendant for four years.
When they arrived, Robinson got out of the car and he and O’Neal began to fight. They stopped fighting when O’Neal said he had had enough. Robinson was getting the better of O’Neal. Then the defendant and Robinson began talking. The defendant took a swing at Robinson and hit him in the face. Then Robinson and the defendant began to fight. The fight did not last long. The two men swung at each other, Robinson ended up on the ground, and the defendant kicked at him. Then Robinson got up and the fight ended. The two exchanged words before Robinson returned to the car and drove away with Tate. The men in the Escalade left also.
Robinson and Tate returned to Tate’s house and went to sleep. At around 5:30 a.m. they got up. Tate was going to drive Robinson home before she had to go to school at 7:00 a.m. They drove to Robinson’s mother’s house and arrived around 6 a.m.
Tate testified as follows:
We pulled in front of his mom’s house and he got ready to get out of the car and a black van pulled up on the driver’s *887 side and the door opened and [the defendant] got out and started shooting at the windshield.
Tate was shot three times in the leg and once in the head. She lost consciousness. Robinson’s testimony corroborated Tate’s testimony in all material respects. He was shot in his left side, right side, and leg.
After the shooting, Robinson got out of the car, went to his mother’s front door, and told his father that “Clee Clee” had shot them. Shonae Tate testified that “Clee Clee” is the defendant’s nickname. Robinson’s father corroborated this exchange. Robinson then called 911. Before the police arrived Robinson called O’Neal’s mother and told her to tell them that they had not killed him. Robinson’s mother testified that before the police arrived she spoke with Tate, who told her that someone with “a name like Clee Clee” had been the shooter.
When the police officers arrived on the scene in response to the 911 call at approximately 6:30 a.m., Robinson, who was bleeding and in obvious pain, told Officer Derrick Roberts that the shooter was “Clee Clee.” Officer Roberts discovered Tate inside the vehicle on the driver’s side. Tate’s car had eleven bullet holes on the driver’s side and the front windshield. Several bullet casings were found in the street; two were found on the vehicle itself. A total of eleven casings were found. In addition, several projectiles were found in the vehicle. Investigators could not find any physical evidence tying the defendant to the shooting. Robinson and Tate told Officer Roberts that the defendant shot them and gave the police taped statements at the hospital. Tate and Robinson each picked the defendant out of a photo lineup.
When defense counsel cross-examined Tate concerning her identification of the defendant, the following exchange occurred:
Defense counsel: You never told them any description or anything about the shooter, except that it was Mr. Glover, true?
Tate: True.
Defense counsel: And the only reason that you — strike that. You have absolutely no idea who the shooter was because that individual was wearing a mask, is that correct?
Tate: True. It’s not correct. He wasn’t wearing a mask.
The defendant was found guilty of two counts of attempted murder in the first degree. The trial court declared him to be a habitual offender and sentenced him to life imprisonment, with a 25 year mandatory minimum.
Glover appealed the summary denial of his motion for postconviction relief, which alleged six claims of ineffective assistance of counsel. We affirm the denial of five of these claims without comment, but we reverse as to his claim concerning defense counsel’s failure to call a witness to impeach Tate’s identification testimony.
Ineffective assistance of counsel claims are mixed questions of law and fact, but where the trial court does not hold an evidentiary hearing purely legal questions are presented, which are reviewed de novo. See Hodges v. State, 885 So.2d 338, 346 (Fla.2004). At the outset, Glover complains that the trial court improperly attached the entire trial record to its order summarily denying his motion, rather than specific portions of the record to refute his claims. He cites Pullum v. State, 893 So.2d 627, 628 (Fla. 2d DCA 2005), which held that a trial court fails to satisfy the requirements of rule 3.850(d) when it submits the entire transcript of trial proceedings with an order summarily denying post-conviction relief. This approach *888 places an undue burden on the litigants and appellate courts. Nonetheless, having read the complete transcript, we address the merits of the defendant’s claim below.
In his amended rule 3.850 motion, the defendant alleged that his attorney was ineffective for failing to call Christopher O’Neal as a witness. According to the defendant, O’Neal would have testified that one of the victims, Shonae Tate, called him a month after the incident and confessed that she did not know who shot her because the shooter was wearing a mask. She said that she and Robinson just assumed it was the defendant because of his build and the fact that they had fought a few hours before. O’Neal was allegedly present at trial and had been listed as a witness in the case. Defense counsel mentioned O’Neal’s expected testimony in his opening statement. At sentencing, O’Neal testified to this account of Tate’s conversation. In his rule 3.850 motion, the defendant stated as follows:
Defendant asserts that he made a direct request for his Trial Counsel to call O’Neal to the witness stand before and after Robinson had denied the “mask issue” (T. pg. 425, 21-22). Thereafter, Counsel advised the Defendant that he would call him if he wanted but, he should wait to see how Mrs. Glover’s testimony played out because if she was not impeached he wouldn’t need O’Neal’s testimony, contemplating granting of J.O.A. Subsequently, the motion for J.O.A. was denied ... and O’Neal was still not called to testify. Further it should be noted that the only reason Defendant forwent testifying in his own behalf was because he anticipated Counsel calling said witnesses, Mr. O’Neal, and Mrs. Glover.
[[Image here]]
Defendant contends that he always expected to present O’Neal in order to refute the evidence of “identification,” and he was just listening to his Counsel’s advice in deferring O’Neal’s testimony at the time. However, before the Defendant knew what was going on, his Trial Counsel rested the case without further consulting with him as to O’Neal testifying....
Although the defendant refers to O’Neal as an “alibi” witness, the substance of his claim is that O’Neal would have impeached Tate’s testimony that the defendant was the shooter and that he was not wearing a mask at the time of the shooting. Had a proper predicate been laid during cross-examination of Tate, O’Neal could have been called as a witness for this purpose. See Kimble v. State, 537 So.2d 1094, 1096 (Fla. 2d DCA 1989). The state argues that O’Neal’s testimony would have been “problematic” and that the decision not to call him “was not unreasonable.” However, this argument goes to trial strategy, which is a matter that cannot be resolved without an evidentiary hearing. See Banks v. State, 825 So.2d 478 (Fla. 4th DCA 2002).

Reversed, and Remanded.

WARNER and POLEN, JJ., concur.